# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### Filed: December 4, 2014
### [NOT TO BE PUBLISHED]

\* \* \* \* \* \* \* \* \* \* \* \* \*     \*
CAROL JONES,                          \*
                                      \*     No. 11-70V
          Petitioner,                 \*
                                      \*
v.                                    \*     Attorneys' Fees; Costs related to
                                      \*     mediation; Life care planner rate;
SECRETARY OF HEALTH                   \*     Hours billed
AND HUMAN SERVICES,                   \*
                                      \*
          Respondent.                 \*
\* \* \* \* \* \* \* \* \* \* \* \* \*     \*

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
Jennifer L. Reynaud, U.S. Department of Justice, Washington, D.C., for respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

**Gowen, Special Master**

On February 2, 2011, Carol Jones ("petitioner") filed a Petition under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 - 34 (2006) ("the Program").[2] Petitioner alleged that as a result of receiving a tetanus-diphtheria ("TD") vaccination on March 16, 2009, she developed a neurologic demyelinating injury. Petition at Preamble. On February 21, 2012, petitioner filed an Amended Petition alleging that as a result of receiving the TD vaccine on March 16, 2009, she developed Guillain-Barre` Syndrome ("GBS"). Amended Petition at Preamble. On July 11, 2013, the parties filed a stipulation in which they stated that a decision should be entered awarding compensation to petitioner. On that same day, Chief Special

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire decision will be available to the public. Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10-34 (2006) ("Vaccine Act"). All citations in this decision to individual sections of the Act are to 42 U.S.C. §300aa.

Master Vowell issued a decision adopting the parties' stipulation for an award.  <u>See</u> Decision on J. Stip., filed July 11, 2013.

On October 10, 2013, petitioner filed a motion for attorneys' fees and costs in the amount of $59,266.74. Respondent opposed petitioner's motion in a response filed on November 12, 2013. On December 3, 2013, petitioner filed a reply to respondent's objections, as well as a supplemental motion for fees in the amount of $3,161.90. The undersigned convened a digitally recorded status conference on the issue of petitioner's fee request on November 3, 2014.

After reviewing the record, the parties' briefs on the matter, and in light of the facts revealed in the status conference, the undersigned finds that petitioner's counsel is entitled to an award of reasonable attorneys' fees and costs in the full amount of petitioner's request.

## I.        Procedural History

This case was initially assigned to Chief Special Master Denise K. Vowell on February 2, 2011, then subsequently to Special Master Thomas L. Gowen on March 6, 2014.

The Petition, filed on February 2, 2011, alleged that petitioner suffered from a neurological demyelinating injury as a result of a tetanus-diphtheria vaccination. Petition at Preamble. Along with the Petition, petitioner filed four sets of medical records. <u>See</u> Petitioner's Exhibits ("Pet. Ex(s).") 1-4. Over the course of the case, an additional fifteen sets of records were filed. <u>See</u> Pet. Exs. 5-19. On November 28, 2011, petitioner filed a Statement of Completion informing the Court that the medical records were complete.

On November 29, 2011, petitioner was ordered to file her expert report by January 30, 2012. The parties were also ordered to file a joint status report updating the Court on their progress toward settlement by no later than January 9, 2012. Petitioner was granted two motions for enlargement of time to file her expert report, which was subsequently filed on April 18, 2012. On February 21, 2012, prior to filing her expert report, petitioner filed an Amended Petition in which she alleged that as a result of receiving the TD vaccination on March 16, 2009, she developed GBS. The Amended Petition contained a detailed chronology of the evolution of the petitioner's GBS and the treatment that she received therefore. On July 18, 2012, respondent moved to suspend her Rule 4(c) report deadline pending informal resolution of the case. Respondent's motion was granted on July 20, 2012. From July 20, 2012 until December 12, 2012, the parties filed a series of status reports updating the Court on the progress of their settlement discussions.

On January 2, 2013, a telephonic status conference was held with the parties in which both counsel reported that they were far apart and that they agreed to petitioner's suggestion of alternative dispute resolution with Special Master Moran. Special Master Moran was not available for mediation until March 2013. Petitioner's counsel proposed using an independent mediator, Jerry P. Roscoe, Esq., instead, who was available to mediate on earlier dates. Respondent agreed to participate in mediation with Mr. Roscoe in New York City. The mediation was held on February 28, 2013 in New York. On the same day, the Court ordered the parties to file a status report on the progress of settlement negotiations by April 5, 2013.

During the succeeding weeks after the mediation, Mr. Roscoe participated in several telephone calls with the petitioner and counsel for respondent and petitioner.  On March 21, 2013, respondent informed the court that the parties had agreed to settlement terms and would soon file a joint stipulation. On July 11, 2013, respondent filed a joint stipulation and Chief Special Master Vowell entered a decision consistent with stipulation. Decision on J. Stip., filed July 11, 2013. Judgment was entered on July 17, 2013 awarding petitioner compensation in the amount of $80,000.00. See Docket Entry no. 59.

On October 10, 2013, petitioner filed a Motion for Attorneys' Fees and Costs to reimburse her counsel of record, Mr. Homer, for the hours and costs he expended on petitioner's behalf.  Motion at 1.  Petitioner requests a total of $36,440.40 in attorneys' fees and $22,826.34 in costs, for a total award of $59,266.74.   Motion at part A. Respondent filed a response to petitioner's motion on November 12, 2013. On December 3, 2013, petitioner filed a reply to respondent's response and a supplemental motion for attorneys' fees and costs seeking $3,161.90 for an additional 13.20 hours of attorney and paralegal time spent in replying to respondent's objections. Supp. Motion at A. In total, petitioner requests a total award of $62,428.64. Id.

**II.     Respondent's Written Objections to Petitioner's Motion for Attorneys' Fees and Costs**

### A.  Attorneys' Fees and Costs Related to the February 28, 2013 Mediation

Respondent raises three objections to the requested attorneys' fees and costs in this case. First, respondent objects to $13,971.81 in attorneys' fees and costs related to the February 28, 2013 mediation with Mr. Roscoe because "[Ms. Jones] did not attend [the mediation]," and the respondent contends, based on her review of petitioner's billing records, the  "petitioner was completely uninvolved in the settlement discussions until well after the mediation was completed." Respt's Response to Petr's Application for Attorneys' Fees and Costs ("Resp.") at 7-8, filed Nov. 12, 2013. Respondent posits that had she been informed that petitioner herself would not be attending the mediation, she would have objected to incurring expenses for travel to New York City. Id. at 7.

In reply to respondent's objection, petitioner recites that the parties had engaged in several months of "largely unproductive" settlement discussions—as was reported during the December 27, 2013 status conference. Petr's Reply to Respt's Response to Application for Attorneys' Fees and Costs ("Reply") at 2, filed Dec. 3, 2013.   Petitioner further stated that the parties valued the litigative risk in this case quite differently, apparently leading to the impasse in negotiations, with their respective settlement numbers being "very far apart."  Reply at 3.

Petitioner also notes in her reply that the issue of petitioner's attendance at the mediation was not raised in the parties' discussions leading to the event, and that respondent at no time suggested that petitioner's attendance was required for her participation. Id. at 4. Petitioner argues that in light of the fact that "counsel routinely participates in mediations without the physical presence of either party's client," respondent's objection to the fees and costs associated with the mediation is unfounded.  Id. at 5. In fact, petitioner's counsel assents that it is his normal

practice to conduct mediations without his client present in order to avoid giving unfair advantage to the respondent who does not bring her client with authority to mediations.   Id. at 5, n. 4. Petitioner notes that the JAMS[3] notice for the mediation stated, "[i]t is important that the representatives who have complete settlement authority attend the mediation session." Id. Petitioner further notes that on the required service list for those attending the mediation, the attorney of record, Amy Fashano, was listed as the sole attendee for petitioner. Id. at 5 n. 4. Finally, the petitioner states that the mediation was the reason the case settled, and that Ms. Jones was aware of the status of the case at all times. Id. at 6-7.

### B.  Costs Related to Petitioner's Life Care Assessment

Respondent next argues that $4,050.00 billed by petitioner's life care planner in preparing a life care assessment, and $700.00 billed by JMW Settlements for pricing the life care plan, was unnecessary because petitioner's GBS sequelae was not severe and her health care costs were covered by Medicare. Resp. at 8.

Petitioner argues in response that while life care plans are not necessary in every case, in this case, petitioner's counsel needed assistance in determining the cost of petitioner's future medical needs. Reply at 8. According to petitioner, who alleges continued residual symptoms of GBS and disability secondary to those symptoms, preparation of an assessment of future medical needs was reasonable and necessary to assist counsel in engaging in meaningful settlement discussions and for participating in a mediation that ultimately played "a pivotal role in resolving the case." Id. at 10.

### C.  Attorneys' Fees and Costs Related to Petitioner's Amended Petition and Affidavit

Lastly, respondent objects to the number of hours billed for drafting, editing, and reviewing the Amended Petition and petitioner's Affidavit. Respondent argues that petitioner spent an unreasonable number of hours on these documents, in light of the fact that "[a]pproximately fourteen of the sixteen pages of the Amended Petition contained a factual summary of petitioner's case, which was predominately composed of large block quotes from the medical records." Resp. at 8. In respondent's view, petitioner's paralegals separately billed to review and summarize the records; therefore the number of hours billed for using those records in the Amended Petition and Affidavit should be reduced. Id.

Petitioner notes that the filing of the Amended Petition and Affidavit provide the foundation for future motions, pleadings, and correspondence. Reply at 12. Thus, "for counsel to refrain from performing these tasks . . . would have been a disservice to petitioner . . . ." Id. at 13. Petitioner avers that the summaries compiled by her paralegals were not formal legal pleadings and thus required an attorney to review the work product in the process of referencing the information in formal pleadings. Id. at 12. Petitioner requests full compensation for the attorneys' fees and costs incurred in drafting those documents.

---

[3] JAMS is the name of the mediation company through which Mr. Roscoe conducts mediations.

### III.     Recorded Status Conference on the Issue of Petitioner's Motion for Attorneys' Fees and Costs

In reviewing the request for fees and costs and respondent's objections thereto—largely focused on costs associated with the preparation for and attendance at a mediation held after months of unproductive negotiation—the undersigned notes that he did not have access to the demand of the petitioner or the response thereto. Nor was he privy to the issues that caused the divergent valuations between experienced counsel, or of the nature of the discussion at the mediation or in the follow up discussions to the mediation held in New York City.  Accordingly, to better understand the factual issues in dispute, the undersigned held a recorded status conference in which counsel for petitioner, Mr. Homer, and counsel for respondent, Ms. Reynaud, participated.

During the status conference, the parties agreed that they had indeed been far apart for months in assessing the value of this case.  Transcript of Nov. 3, 2014 Proceedings (Transcript) at 4, Docket No. 72.  They also agreed that the case settled quite quickly after the mediator was involved even though the parties had been at loggerheads for months. Id. at 17. The parties acknowledged that there was a written mediation agreement which they had both signed prior to the mediation that set forth the mediator's rates. Id. at 4.  Respective counsel both had settlement authority[4] on the day of the mediation—the petitioner for less than had previously been demanded and the respondent for more than had previously been offered.  Id. at 21. As to why the mediation was held in New York, respondent indicated that she deferred to the petitioner's choice of location. Id. Petitioner indicated that New York City was a half-way point for counsel. Id. at 19. The undersigned observed that the location did not appear to have been selected to facilitate the attendance of the petitioner, who lives in the suburbs of Chicago. This issue had been raised by Chief Special Master Vowell during a status conference, at which time the parties advised that they did not believe it would be necessary to travel to Chicago. Reply at 3, n. 4.

The undersigned observed that had the petitioner herself attended the mediation, travel costs from Chicago would have been incurred and that these costs were saved by engaging her by telephone. Respondent indicated that she did not know that it was counsel's practice not to bring his client to mediation and indicated that had she known of this, she would not have agreed to travel. Id. at 15. Respondent stated that having the two attorneys meet with the mediator was "an absurd waste of resources." Id. at 16. Petitioner observed that the mediation company, JAMS, required a list of attendees to be exchanged in advance and that the attorney of record, Amy Fashano, was listed as the only attendee for the petitioner. Id. at 30. Petitioner further noted that respondent's counsel signed that document. Id.

When asked by the undersigned why a life care plan was necessary in a case that settled for $80,000, petitioner's counsel explained that petitioner had ongoing disabilities and impairments resulting from her GBS.  Particularly, given that the parties were far apart in their valuation of the case, counsel felt that it was necessary to obtain cost information for the medications, medical equipment, and other modifications (such as for driving) that petitioner required to accommodate her disability.  Id. at 24.  Counsel indicated that they did not obtain a

---

[4] The parties understood that the Department of Justice's settlement authority was subject to final approval after a settlement figure was reached.

full blown life care plan but rather an assessment in which the life care planner, working at $150 an hour, obtained the cost information, confirmed the need for items claimed, and determined which items would be covered by Medicare and which would not. Id. at 10.  Indeed, respondent acknowledged the need for these valuations to understand the full value of the case.  Id. at 14.

Petitioner indicated and respondent agreed that the life care assessment, the Amended Petition, the petitioner's detailed demand, the respondent's response to the demand, and respondent's case memo were provided to the mediator in advance of the mediation. Id. at 32-33. When asked about specific objections to the life care assessment expenditure, respondent indicated that for months they had not had documentation of losses. Id. at 23-24. Presumably, the life care assessment provided at least some of that information. However, when pressed by the undersigned, respondent indicated that the issue rather was documentation of the petitioner's wage loss claim. Id. at 23-25. Counsel for petitioner stated that counsel's records showed that petitioner's W2s and Social Security earnings history had been provided to respondent.  Id. at 26.

As to why the case settled for $80,000 when the petitioner's demand was apparently considerably higher, petitioner explained that on January 25, 2013, three days before the mediation, an opinion in the Isaac case was issued by Judge Horn of this Court. See Isaac v. Sec'y of HHS, 108 Fed. Cl. 743 (2013). In that opinion, Judge Horn affirmed the decision of Special Master Lord denying compensation in a case in which the petitioner claimed that the TD vaccination caused her GBS. Id. Petitioner acknowledged that because of that opinion, which was provided to the mediator by the respondent, her negotiating position was severely compromised. Transcript at 27. Thus, the ultimate settlement value of the case was not a reflection of a lack of evidence of ongoing impairment or future medical needs, but rather the litigative risk concern that, based on Isaac, there would not be a favorable causation determination at a hearing. Id.

## IV.   Analysis

### A.   Applicable Legal Standards

Petitioner "bears the burden of establishing the hours expended" in seeking a fee award for those hours. Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Reasonable attorneys' fees are determined by applying the lodestar method. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Under this method, a court first determines an "initial estimate [of fees] . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. Then, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348. Special Masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). The requirement that attorneys' fees be reasonable applies also to costs.  Perreira, 27 Fed. Cl. at 34 ("Not only must any request for attorneys' fees be reasonable, so must any request for reimbursement of costs").

In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorneys' fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### B. Reasonable Attorneys' Fees and Costs

Petitioner's motion will be discussed in the order of respondent's objections and petitioner's replies to those objections. At the outset it should be noted that the undersigned Special Master reviewed the billing statement of petitioner's counsel. The statement was detailed, appeared to be contemporaneously kept, and set forth work done at different rates by paralegals, associates, and partners. The fees for paralegals were charged in the range of $105 to $110 per hour; for associates between $203 and $218 per hour; and for senior partners at $300 and $330 per hour. See Motion at part A. The vast majority of the work was performed by paralegals and associates and billed at those rates. Id. Although not in dispute, the undersigned finds the fees prior to and after the mediation reasonable, as all of the attorneys have significant experience in the Vaccine Program, and the case involved an extensive medical record. See Wasson, 24 Cl. Ct. at 486.

### 1. The attorneys' fees and costs related to the February 28, 2013 mediation is granted in full because its effectiveness is apparent from the record and the parties agreed beforehand to incur expenses related to the meeting.

Petitioner seeks $4,907.60 in attorneys' fees and $9,094.21 in costs related to the mediation in New York City on February 28, 2013. Of the costs, Mr. Jerry Roscoe billed $7,865.00 to mediate this case. Respondent does not object to the attorney time spent discussing the possibility of alternative dispute resolution, or the attorney and paralegal time spent contacting Mr. Roscoe or his office to arrange the mediation. Resp. at 7, n 2. Respondent also does not object to attorney time spent communicating with petitioner after the mediation. Id. Respondent only objects to the attorneys' fees and costs petitioner incurred in preparing for and attending the mediation. Id. Although respondent, in her objections, asked the undersigned to "significantly reduce" the fees and costs associated with the mediation, through the status conference it was confirmed that she did not object to the mediator's fee and in fact had agreed to the mediation and the rate charged. Transcript at 16-17. Respondent's objection to the mediation appears to boil down to the perception that the key to resolution of the case was to have had the petitioner herself interact with the mediator on the day of the mediation. Id. at 17. She does, however, agree that the mediator had been effective, particularly when he spoke with petitioner on the telephone several times after the day of mediation, and engaged in telephonic settlement discussions with counsel. Id. at 17-18.

On this issue, the effectiveness of the mediation is apparent from the record. The parties filed a joint stipulation for an award of compensation exactly three weeks after the mediation took place on February 28, 2013. In the experience of the undersigned, it is not at all uncommon for mediations not to produce a settlement on the day of the mediation—particularly when the parties have been far apart in their respective positions prior to the mediation.  The input of a neutral third party often has the effect of dislodging fixed positions such that a case settles shortly after the mediation session.  This is particularly true when, as in this case, the mediator remained involved in discussions with the parties until the settlement was reached. <u>See</u> Motion at A, p. 41. The face to face discussion between the mediator and counsel is often very important to beginning the process of softening the differing positions and beginning the movement toward settlement. It would appear likely that the process of softening positions began with the input of Mr. Roscoe to counsel on February 28, and evolved over the following weeks through his further participation in multiple phone calls with the petitioner herself and both counsel.

While it is often preferable to have petitioners attend a mediation in person, the undersigned does not find that her non-attendance provides a basis for concluding that petitioner's fees and costs are unreasonable. Neither party's written submission makes clear as to why the mediation was held in New York City, but it would seem apparent from the status conference that it was not for the convenience of the petitioner who lives in Illinois. If the presence of the petitioner was considered critical by either party, the mediation presumably would have been scheduled for a location in Illinois, an issue raised by Chief Special Master Vowell. Reply at 3, n. 4. It should be noted that had Ms. Jones attended the mediation, additional costs would have been incurred, including airfare from Chicago, ground transportation, hotel and meals. If the mediation had been held in Chicago, larger costs for counsel's time and airfare could have been incurred. Accordingly, it appears the critical issue was whether counsel with settlement authority (whether direct, or in the case of respondent, indirect) were present. Both counsel acknowledged that they had settlement authority at the mediation that was closer than their previous positions.

The mediator's fee of $7,865, to which the respondent has not objected, represents approximately 86% of the mediation costs of $9,094.21, leaving $1,229.21 of costs in dispute. Presumably, whether the mediation was held in Washington D.C., New York, Boston, or Chicago, the petitioner's counsel would have spent time in preparation for the mediation to assure that the mediator was adequately briefed on the facts and issues in the case, and to be sure that she herself was sufficiently fresh on the facts and issues to discuss them intelligently at the mediation. The fees incurred in preparation for the mediation were modest ($4,907.60), and most importantly the mediation was successful, albeit not on the day of mediation but within the following weeks. Accordingly, it would appear that the remaining time, which is not broken out in the objections, would be for travel, some of which would have been expended wherever the mediation was held and which would have been more costly had the petitioner herself attended.

Most importantly, the parties *agreed* to conduct the mediation in New York City and also *agreed* to utilize Mr. Roscoe's services, pursuant to a fee structure set forth in the mediation agreement which both parties signed prior to the mediation. Respondent acknowledges that she had worked with Mr. Roscoe in prior cases in the Program and was agreeable to his selection as mediator. Resp. at 4. Mr. Roscoe's fee is on the higher end of typical mediation fees, but it is not

out of the ordinary or unreasonable given the extensive written documentation that was provided by the parties for his review prior to the mediation. In light of that, and the fact that Mr. Roscoe remained involved in the case until it was settled shortly thereafter, petitioner's request for fees and costs associated with the mediation are reasonable.

### 2. The $4,050.00 billed for preparing a life care assessment, and the $700.00 billed for pricing the assessment is granted in full in light of the circumstances that existed at the time the expenses were incurred.

Petitioner seeks a total amount of $4,750.00 for costs associated with preparing a life care plan.[5] Respondent objects on the basis of her contention that preparing and pricing a life care plan was unnecessary, as she contends "that petitioner was covered by Medicare and her GBS sequelae appear[ed] to have been relatively limited." Resp. at 8. Petitioner argues that although damages are apparent and easy to estimate in many cases, in this case petitioner's counsel needed assistance in determining the costs of petitioner's future medical needs. Reply at 8. Indeed respondent acknowledged in the status conference that she needed support for the future damages claimed by the petitioner. Transcript at 25-26.

On this issue, the undersigned must allow leeway for petitioner to develop proofs necessary to persuade opposing counsel, the mediator, and ultimately the Special Master of future damages. Upon review of the joint status reports filed from January 9, 2012 through the mediation in February 2013, settlement discussions were unsuccessful partly because the parties required more documentation to formulate or respond to a demand. It was alleged in the Amended Petition that petitioner continued to suffer with ongoing symptoms that interfered with activities of daily living and with her ability to return to work. Amended Petition at ¶ 34. It can be envisioned that future compensable needs may have included items or services not covered by Medicare.

While it is easy to say in hindsight that a life care plan was unnecessary, it is apparent that multiple issues separated the parties throughout settlement discussions. It is also easy to say in retrospect that a case that settled for $80,000 did not justify a life care assessment. However, through the status conference, it was learned that the petitioner's position in the negotiation changed substantially as a result of adverse authority in the *Isaac* case that issued just three days before the mediation. Had that opinion not come down when it did, or had the mediation been held weeks earlier, the importance of the life care assessment would likely have been much greater, as the ultimate value of the case turned not on considerations of disability or future needs, but on litigative risk considerations raised by the *Isaac* case.

Petitioner's life care assessment was performed well before the *Isaac* case was decided and was also provided to the mediator. As such, the costs for the life care assessment and the charge for valuing the items in the plan are reasonable, as it likely would have played a larger role in determining damages had the *Isaac* decision not intervened, and it likely still played a role in justifying the damages claimed.

---

[5] Mr. Homer did advise the Special Master in the recent status conference that they did not obtain a full blown life care plan but rather an assessment to determine the needs and costs of future care items.

### 3. Petitioner's counsel spent a reasonable amount of hours in drafting, editing, and reviewing the Amended Petition and Affidavit.

Petitioner spent approximately seventeen hours in drafting, reviewing, and editing the Amended Petition and petitioner's Affidavit. Petitioner requests approximately $3,638.30 in attorneys' fees for these tasks. Respondent objects to the number of hours billed as excessive and unnecessary because counsel's paralegals separately billed to review and summarize records counsel later references in the Amended Petition and Affidavit. Resp. at 8. Respondent argues that since a significant number of pages of the Amended Petition were "predominately composed of large block quotes from medical records," the undersigned should reduce the number of hours allowed for this task. Id. Respondent also objects to the time spent in preparing the Affidavit because the billing entries often combined the two tasks—preparing the Amended Petition and Affidavit; thus "it is not possible to determine exactly how much time was spent on each." Id.

In reply, petitioner asserts that the summary prepared by counsel's paralegals were not formal legal pleadings that can be filed with the court, but rather a summary of "typically extensive and often virtually unreadable" medical records. Reply at 12. Counsel states that petitioner's Amended Petition and Affidavit served as a useful tool and saved time in drafting a letter to petitioner's medical expert asking him to review her case. Id. at 13.  The Amended Petition was also provided to the mediator. Transcript at 33.

The undersigned is inclined to agree with petitioner's view that the preparation of the detailed Amended Petition requires significant review, analysis, and organization of the medical records. Particularly, the undersigned finds that the detailed and organized Amended Petition prepared by counsel in this and other cases is helpful in coming to an efficient understanding of the issues—just as respondent's Rule 4(c) reports are helpful in achieving the same. These reports or petitions require professional judgment as to the relevance of records inserted as well as organization and analysis of the chronologies presented through both the Amended Petition and the Rule 4(c) reports. The undersigned finds that both of these documents were helpful in reviewing the case and finds that it is highly likely that expert witnesses and mediators would have also found them helpful in achieving efficiency in the expenditure of their time. The undersigned also finds that billing seventeen hours of attorney time to prepare the Amended Petition and Affidavit, containing considerable medical detail with direct quotations from the medical records, in addition to approximately twenty-one hours of paralegal time summarizing nineteen exhibits of medical records, to be reasonable in this case.

Finally, the petitioner is entitled to be compensated for the time spent in replying to the respondent's objections to her motion for attorneys' fees and costs.  The 13.20 hours spent in doing so was also reasonable. Id.

## V.     Conclusion

Based on the foregoing, petitioner's motion for fees' and costs is **GRANTED** in full. A total award of $62,428.64[6] shall be awarded in the form of a check jointly payable to petitioner,

---

[6] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.

Carol Jones and Ronald C. Homer of Conway, Homer & Chin-Caplan, P.C., for petitioner's attorneys' fees and costs.[7]

The clerk of the court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]


**IT IS SO ORDERED.**

**s/ Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

Furthermore, 42 U.S.C. § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[7] According to petitioner's statement pursuant to General Order No. 9, petitioner has not incurred any costs or out of pocket expenses associated with the law office of Ronald C. Homer, in support of petitioner's vaccine compensation claim. Pet. And Counsel Statement, filed Oct. 15, 2013.

[8] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing, separately or jointly, a notice renouncing the right to seek review.